**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello**

Civil Action No. 13-cv-02107-CMA

JOSEPH ADAM STENSON,

    Plaintiff,

v.

CAROLYN W. COLVIN, Acting Commissioner of Social Security,

    Defendant.

**ORDER AFFIRMING ALJ'S DECISION DENYING SOCIAL SECURITY BENEFITS**

This matter is before the Court on review of the Commissioner's decision to deny Plaintiff Joseph Adam Stenson's ("Plaintiff") application for social security disability benefits under Titles II and XVI of the Social Security Act. Jurisdiction is proper under 42 U.S.C. § 405(g).

## I. BACKGROUND

Plaintiff applied for disability insurance benefits on October 11, 2012, and supplemental security income on October 17, 2012. Plaintiff was born on September 15, 1969, and was 41 on his alleged disability onset date of December 5, 2010. He received a GED and worked in the past as a fast food worker and manager, survey worker and manager, sandwich maker, cutter, welder, and telemarketer. Plaintiff also

testified that, between June 2011 and the end of 2012, he owned a business in which he worked sporadically as a laborer. (AR at 32-41.)[1]

Plaintiff alleges that he suffers from posttraumatic stress disorder (PTSD), major depressive disorder, and gastrointestinal symptoms, including abdominal pain and hemorrhoids. He testified that he has suffered from hemorrhoids since he was 17 years old and that the resulting physiological issues cause him to need unscheduled bathroom breaks throughout the day. He takes medication for his depression. (AR at 41-53.)

Plaintiff testified that he is homeless, but stays at his girlfriend's house two to three times per week and that he helps her with laundry, cleaning, washing dishes, and cooking. He also stays at his parents' house two or three times per week and helps them with laundry, cleaning, cooking, and grocery shopping. He testified that he can stand for 10 to 15 minutes, walk for 10 minutes, sit for up to an hour, and lift up to 40 pounds. (AR at 53-55.)

After his initial application was denied, Plaintiff requested a hearing, which was held on March 21, 2013, before an Administrative Law Judge ("ALJ"), who issued an unfavorable decision on April 11, 2013. (AR at 9-20.)

In applying the five-step sequential evaluation process outlined in 20 C.F.R. §§ 416.920 to determine whether Plaintiff was disabled, the ALJ determined that:

1. Plaintiff had not engaged in substantial gainful activity since December 5, 2010, the alleged onset date [Step 1];

---

[1] Citations to the Social Security Administrative Record, which is found at Doc. # 9, will be to "AR" followed by the relevant page number.

2. Plaintiff had the following severe impairments: abdominal pain, hemorrhoids, major depressive disorder versus dysthymia, and posttraumatic stress disorder (PTSD) [Step 2];

3. Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 [Step 3];

4. Plaintiff had the residual functional capacity ("RFC") "to perform a range of medium exertion work-related activities as described in the Regulations with the following specific limitations: he can lift and carry 25 pounds frequently and 50 pounds occasionally; can sit for at least six hours in an eight-hour workday; can stand/walk for at least six hours in an eight-hour workday; can frequently stoop, kneel and crouch; must avoid exposure to unprotected heights and open machinery; is able to maintain the concentration, persistence, and pace to understand, remember, and carry out routine and repetitive, but not complex instructions; and is able to occasionally interact with supervisors, coworkers, and the public." [Step 4]; and

5. Plaintiff was unable to perform his past relevant work, but can perform jobs that exist in significant numbers in the national economy [Step 5].

The Appeals Council denied Plaintiff's request for review. (AR at 1-3.) On August 7, 2013, Plaintiff filed his appeal of the Commissioner's final decision. (Doc. # 1.) Plaintiff filed his opening brief on April 25, 2014, and the Commissioner responded on May 21, 2014. (Doc. ## 14, 15.)

## II. STANDARD OF REVIEW

The Court reviews the ALJ's decision to determine whether substantial evidence in the record as a whole supports the factual findings and whether the correct legal standards were applied. *See Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. It requires more than a scintilla, but less than a preponderance." *Id.* (quoting *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007)).

"Evidence is not substantial if it is overwhelmed by other evidence in the record." *Grogan v. Barnhart*, 399 F.3d 1257, 1261-62 (10th Cir. 2005). In so reviewing, the Court may neither reweigh the evidence nor substitute its judgment for that of the agency. *Salazar v. Barnhart,* 468 F.3d 615, 621 (10th Cir. 2006).

## III.  ANALYSIS

Plaintiff contends that the ALJ erred by (1) failing to apply the "treating physician rule" to Dr. Mang's opinions regarding Plaintiff's mental limitations; (2) relying on "incompetent and immaterial evidence" to assess Plaintiff's credibility with respect to his gastrointestinal symptoms; (3) failing to address the limiting effects of Plaintiff's gastrointestinal symptoms in his RFC; and (4) making insufficient findings of fact to support his conclusion that Plaintiff could perform certain representative occupations at step five.  (Doc. # 14.)  The Court will address these contentions in turn.

**A.     WHETHER THE ALJ ERRED BY FAILING TO APPLY THE "TREATING PHYSICIAN RULE" TO DR. MANG'S OPINION REGARDING PLAINTIFF'S MENTAL LIMITATIONS**

According to the "treating physician rule," the Commissioner will generally "give more weight to medical opinions from treating sources than those from non-treating sources." *Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004); *see also* 20 C.F.R. § 404.1527(c)(2). In deciding how much weight to give a treating physician's opinion, an ALJ must first determine if the opinion is entitled to controlling weight. *See Watkins v. Barnhart,* 350 F.3d 1297, 1300 (10th Cir. 2003). An opinion is so entitled if it is well-supported by the medical evidence and is consistent with other substantial evidence in the record. *See id.* Substantial evidence is "such relevant evidence as a reasonable

mind might accept as adequate to support a conclusion." *Fowler v. Bowen,* 876 F.2d 1451, 1453 (10th Cir. 1989) (internal quotation marks omitted).

Even if a treating physician's opinion is not entitled to controlling weight, however, "[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527." *Id.* Those factors are:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Drapeau v. Massanari*, 255 F.3d 1211, 1213 (10th Cir. 2001); 20 C.F.R. § 404.1527(c). Under Tenth Circuit case law, "an ALJ must give good reasons for the weight assigned to a treating physician's opinion that are sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reason for that weight." *Langley*, 373 F.3d at 1119 (internal quotation marks and citations omitted).

Plaintiff alleges that the ALJ's decision to discount Dr. Mang's opinion is not based "on any serious evaluation of the factors listed in the rule, but [instead based on] a number of bald conclusions based on essentially unsupported inferences from the evidence." (Doc. # 14 at 12.)  The Court disagrees with this characterization of the ALJ's decision, which was thorough and well-reasoned.

The ALJ determined that Dr. Mang's opinion regarding Plaintiff's mental limitations was not entitled to controlling weight and instead assigned her opinion "less weight than the better supported assessment of the examining psychologist, Dr. Valette." (AR at 16.) In so doing, the ALJ explained that the Dr. Mang began treating Plaintiff on November 30, 2012 and issued her medical assessment shortly thereafter in March 2013. Plaintiff acknowledges that "this is not a years-long relationship," but nonetheless argues that Plaintiff's six visits was the maximum number allowed with his level of coverage. (AR at 12.) While this may be true, it does not change the fact that Dr. Mang's treatment relationship with Plaintiff was relatively short, which the ALJ properly observed. *See* 20 C.F.R. § 404.1527(c)(1)(length of treatment).

The ALJ went on to explain that Dr. Mang's assessment, given via a medical source statement form, was inconsistent in several respects. First, the ALJ noted an inconsistency in the form itself. Although Dr. Mang indicated that she was not able to assess Plaintiff's capacity to perform specific mental work-related activities, she nevertheless checked a box indicating that Plaintiff may decompensate even under minimal increase in demands or a change in environment. *See Frey v. Bowen*, 816 F.2d 508, 515 (10th Cir. 1987) (opinions provided as checkmarks on a form without sufficient explanation are generally considered weak evidence). The ALJ explained that this opinion was inconsistent with Plaintiff's medical treatment records prior to November 30, 2012; his self-reported activities of daily living; and the "detailed and well-supported report of the November 2012 consultative exam." (AR at 16); *see* 20 C.F.R. § 404.1527(c)(3)(supportability); (c)(2)(consistency).

The ALJ went on to note inconsistencies between Dr. Mang's opinion and her own and her staff's treatment notes. Specifically, the ALJ observed that Dr. Mang asserted that "while meeting with a new counselor" on March 7, 2013, Plaintiff "became quickly agitated and initially had difficulty calming himself (*e.g.* shaking, muttering, frustration) with an affect that was agitated and congruent." (AR at 16.) Yet, the ALJ explained that counseling records show that Plaintiff did not meet with a new counselor on March 7, 2013, but did see counselor Corey Steben, who Plaintiff first met on February 27, 2013, then saw again on March 6th and 13th. The ALJ explained, "in marked contrast to Dr. Mang's opinion, the report of [Plaintiff's] first visit with Corey Steben documents some irritability, depression, and anxiety, but that he also exhibited appropriate behavior and affect and [included] no findings of agitation, shaking, muttering, or frustration . . . ." (AR at 17.)

Plaintiff argues that "the ALJ seems to jump to the conclusion that, although Dr. Mang stated she met with [Plaintiff] on March 7, 2013, she did not in fact do so." (Doc. # 14 at 14.) However, the ALJ made no such "jump" and instead properly considered whether Dr. Mang's opinion was supported by and consistent with the treatment records upon which she relied. *See* 20 C.F.R. §§ 404.1527(c)(3) (supportability); (c)(2)(consistency). Indeed, although treatment notes show that Plaintiff did meet with a counselor on March 6, 2013, those notes are not consistent with Dr. Mang's report. *See* (AR at 384-85). Moreover, the ALJ acknowledged that Dr. Mang may have intended to refer to treatment notes from Plaintiff's January 4, 2013 visit, during which a counselor indicated that Plaintiff had a "somewhat" disorganized thought

7

process. Yet, Dr. Mang's notes from that same day indicated that Plaintiff presented with "perhaps some malingering." (AR at 17.) The ALJ gave good reasons for the weight assigned to Dr. Mang's opinion "that are sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reason for that weight." *Langley*, 373 F.3d at 1119 (internal quotation marks and citations omitted). Nothing more was required. Plaintiff's arguments essentially ask this Court to reweigh the evidence, which it is not entitled to do. *See Oldham v. Astrue*, 509 F.3d 1254, 1257-58 (10th Cir. 2007) (reviewing court "may not displace the agency's choice between two fairly conflicting views," even if the Court may have "made a different choice had the matter been before it *de novo*"); *Salazar*, 468 F.3d at 621 (reviewing court may not reweigh the evidence or substitute its judgment for that of the Commissioner). Accordingly, the ALJ did not err in assigning Dr. Mang's opinion less weight than Dr. Valette's opinion.

**B.   WHETHER THE ALJ IMPROPERLY ASSESSED PLAINTIFF'S CREDIBILITY WITH RESPECT TO HIS GASTROINTESTINAL SYMPTOMS**

"[C]redibility determinations 'are peculiarly the province of the finder of fact,' and should not be upset if supported by substantial evidence." *White v. Barnhart*, 287 F.3d 903, 909 (10th Cir. 2001) (quoting *Kepler v. Chater*, 68 F.3d 387, 390-91 (10th Cir. 1995)). Provided the ALJ links his credibility assessment to specific evidence in the record, his determination is entitled to substantial deference. *Id.* at 910. The ALJ is not required to set forth a formalistic factor-by-factor recitation of the evidence, but must only set forth the specific evidence he relied on in evaluating Plaintiff's testimony. *See Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000). Because the determination of

credibility is left to the ALJ as the finder of fact, that determination is generally binding on the reviewing court.

Although the ALJ determined that Plaintiff's impairments could reasonably be expected to produce his alleged symptoms, the ALJ concluded that his "statements concerning the intensity, persistence, and limiting effects of these symptoms were not entirely credible . . . ." (AR at 14.)  The ALJ supported his credibility determination with a lengthy discussion of the record evidence.  First, the ALJ reasoned that Plaintiff's self-reported activities of daily living, including cooking, household chores, and grocery shopping for his girlfriend and parents, were inconsistent with the alleged severity of his symptoms and limitations.  *See Hamlin v. Barnhart*, 365 F.3d 1208, 1220 (10th Cir. 2004) (credibility determination should include consideration of an individual's daily activity).

Next, the ALJ observed that Plaintiff's "need to take six unscheduled breaks a day and to miss about two days of work a week since he was age 17 contrasts substantially with his performance of several years of work . . . ." (AR at 15.)  Plaintiff contends that the ALJ improperly concluded, based on Plaintiff's job history, that he was not disabled, which is a "conclusion [that] requires a logical leap that is simply not supported by the evidence." (Doc. # 14 at 15-16.)  However, it is appropriate for the ALJ to consider whether Plaintiff's work history demonstrates that his limitations are not as severe as he claims.  *See Shepard v. Apfel*, 184 F.3d 1196, 1202 (10th Cir. 1999).  Indeed, the ALJ reasoned that Plaintiff's report that he "walked one to two miles a day and had worked as a landscaper until September 2012 . . . appear inconsistent with the

alleged severity of his symptoms and limitations and suggest much greater physical capacity than he alleges." (AR at 18.)

The ALJ also explained that Plaintiff's medical records failed to substantiate his claims of the limiting effects of his gastrointestinal issues. Specifically, the ALJ noted that Plaintiff did not seek medical treatment between January 2012 and October 2012. *See Hudson v. Bowen*, 838 F.2d 1125, 1132 (10th Cir. 1988) (plaintiff's "statements may be less credible if the level or frequency of treatment is inconsistent with the level of complaints"). In November 2012, Plaintiff underwent a colonoscopy that revealed only moderate bleeding hemorrhoids and no other abnormalities. In February 2013, Plaintiff again complained of hemorrhoids, but did not report having any significant functional limitations as a result. (AR at 15.) Thus, the ALJ concluded that "medical treatment records document no significant physical abnormalities other than some hemorrhoids and no documentation of significant physical functional abnormalities." *See Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) (credibility determinations should be linked to evidence).

Plaintiff contends that the ALJ impermissibly picked some of consultative examiner Dr. Jendry's limitations while ignoring his uncontroverted limitations with respect to Plaintiff's gastrointestinal problems. (Doc. # 14 at 16.) While an ALJ may not rely on only those portions of an opinion that support a finding of nondisability, *Hamlin v. Barnhart*, 365 F.3d 1208, 1219 (10th Cir. 2004), here, Dr. Jendry rendered his opinion before Plaintiff's colonoscopy revealed only moderate hemorrhoids. The ALJ explained that although Dr. Jendry's opinion was largely persuasive, his suggestion that Plaintiff's

gastrointestinal problems would limit his ability to work all or part of the work day was not supported by Plaintiff's treatment records.

In addition, the ALJ noted that Dr. Mang's notation that Plaintiff exhibited "perhaps some malingering," which the ALJ noted "does not enhance the persuasiveness of the [Plaintiff's] subjective complaints." (AR at 15); *Wall*, 561 F.3d at 1069-70 (ALJ reasonably discounted self-reported limitations in light of malingering). The ALJ properly considered objective and subjective factors and gave supporting reasons for his credibility determination. *See* 20 C.F.R. § 404.1529. Accordingly, the Court is not persuaded that the ALJ erred in rendering his credibility determination.

## C.  WHETHER THE ALJ ERRED BY NOT INCLUDING LIMITATIONS REGARDING PLAINTIFF'S GASTROINTESTINAL SYMPTOMS IN HIS RFC

Plaintiff also contends that the ALJ erred when he found at step two that Plaintiff's abdominal pain and hemorrhoids were severe, but did not include limitations related to those impairments in his RFC at step four. However, without some evidence that Plaintiff's gastrointestinal symptoms caused functional limitations, the ALJ was not required to include that limitation in his RFC. *See Miller v. Astrue*, 496 Fed. App'x. 853, 859-60 (10th Cir. 2012) (ALJ did not err when he did not include limitations for an impairment he found to be severe at step two when that limitation was not "borne out by the evidentiary record."). Because the Court has separately determined that the ALJ did not err in determining that Plaintiff's gastrointestinal symptoms did not cause work-related limitations, the ALJ was not required to include those limitations in the RFC.

**D.     WHETHER THE ALJ MADE INSUFFICIENT FINDINGS OF FACT TO SUPPORT HIS CONCLUSION THAT PLAINTIFF COULD PERFORM CERTAIN REPRESENTATIVE OCCUPATIONS AT STEP FIVE**

Last, Plaintiff alleges that the ALJ erred at step five when he relied on a vocational expert's (VE) testimony that he could perform representative work as a cleaner and cleaner/housekeeper, as defined in the *Dictionary of Occupational Titles* (DOT).

If a claimant has demonstrated that he cannot return to his past relevant work, the ALJ then considers whether, given his age, education, past relevant work, and residual functional capacity, the claimant can perform other work in the national economy. 20 C.F.R. § 404.1520(g). In determining whether a claimant can perform other work, an ALJ may rely on the testimony of a vocational expert if the ALJ poses a hypothetical question that reflects all the limitations that he ultimately includes in his residual functional capacity assessment. *See Qualls*, 206 F.3d at 1373.

Plaintiff argues that because the ALJ included social limitations in his RFC and the DOT does not list the social interaction requirements for these jobs, he should have made additional findings regarding how Plaintiff would meet the social requirements of the jobs. In so arguing, Plaintiff claims that there is a conflict between the DOT and the *Description Notes to the Dictionary of Occupational Titles*, which states that both jobs require knowledge of customer and personal service. The Commissioner responds that it appears that Plaintiff is referring to the "'O*Net,' which the Department of Labor uses for purposes of its own ALJs for adjudicating labor and labor-related immigration cases." *See* U.S. Dep't of Labor, *Dictionary of Occupation Titles*, 4th ed.,

http://www.oalj.dol.gov/libdot.htm (last visited October 17, 2014).  Plaintiff did not file a reply brief responding to this inference and failed to include proper citations to the source he cites in his opening brief.  This lack of proper citations undermines this Court's ability to locate and review this source to determine whether Plaintiff, in fact, refers to the O*Net.  This alone would be reason to disregard Plaintiff's argument.  *See Miller*, 496 F.App'x at 855; *Chambers v. Barnhart*, 389 F.3d 1139, 1142 (10th Cir. 2004) ("The scope of . . . review . . . is limited to the issues the claimant . . . adequately presents on appeal.").

However, upon reviewing the descriptions in O*Net, which include customer and personal service as skills required for the cleaner and housekeeper positions, the Court agrees that it appears that Plaintiff is referring to this resource.  Plaintiff offers no evidence that the O*Net is applicable to Social Security reviews and therefore should be considered by the ALJ at step five.[2]  Thus, the alleged conflict between that resource and the DOT was not apparent and the ALJ was not required make findings beyond accepting the VE's testimony.  *Cf.* SSR 00-4p, 2000 WL 1898704, at *2 ("When there is an apparent unresolved conflict between [VE] evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the [VE] evidence to support a determination or decision about whether the claimant is disabled.")  Therefore, the ALJ did not err at step five.

---

[2] *Cf. Occupational Information Development Advisory Panel, Finding Report: A Review of the National Academy of Sciences Report A Database For A Changing Economy: Review Of The Occupational Information Network (O*NET)* 8-9 (June 28, 2010), available online at http://www.ssa.gov/oidap/Documents/COMPLETE%20FINAL--Findings%20Report%20OIDAP%20062810.pdf (last visited October 17, 2014) (discussing the "relevance and lessons learned useful to SSA's development of an occupational information system (OIS) to replace the aging [DOT] in the disability adjudication process.")

## IV. **CONCLUSION**

Accordingly, it is ORDERED that the ALJ's denial of social security disability benefits is AFFIRMED.  Each party shall bear its own costs and attorney fees.

DATED:  October __20__, 2014

BY THE COURT:

*/s/ Christine M. Arguello*
_____
CHRISTINE M. ARGUELLO
United States District Judge